## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

PAULA P. PINGEL,

                Plaintiff,

   v.

GENERAL ELECTRIC COMPANY,

              Defendant.

3:14 - CV - 00632 (CSH)

**DECEMBER 19, 2014**

## RULING ON MOTION COMPEL ARBITRATION AND DISMISS OR, IN THE ALTERNATIVE, STAY THE PROCEEDINGS

**HAIGHT,** Senior District Judge

This case is before the Court on Defendant General Electric's motion to compel arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*, and to dismiss Plaintiff's complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) or 12(b)(6), or in the alternative, to stay the proceedings pursuant to 9 U.S.C. § 3 pending the completion of arbitration. Plaintiff Paula P. Pingel opposes the motion. This Ruling decides it.[1]

## I.  BACKGROUND

The following facts, derived from Plaintiff's complaint and the parties' briefing on the instant motion, are accepted as true for the purposes of this Ruling.

Plaintiff was hired by Defendant in 2006 to work in its Milwaukee, Wisconsin office. Doc. [1] at ¶ 6; Doc. [24-1] at ¶ 4. In 2010 she brought a discrimination claim against Defendant, which

---

[1]Plaintiff has also filed a motion for hearing (Doc. #27), requesting oral argument on Defendant's motion. Plaintiff's motion is considered herein and resolved in the conclusion of this Ruling.

was resolved to the mutual satisfaction of all parties in January 2011. Doc. [1] at ¶¶ 7-8; Doc. [24-1] at ¶ 5-6.  As part of the parties' resolution of that dispute, Plaintiff was offered, and accepted, the position of "Strategic Marketing Manager – Southern Region."  Doc. [1] at ¶ 9; Doc. [24-1] at ¶ 6.  The position, which required Plaintiff to move to North Carolina, was classified in the "Senior Professional Career Band" and paid "a gross annual salary of $150,000." Doc. [20-1], Ex. A, at 2.

As a condition of her new employment, Plaintiff signed Defendant's "Acknowledgment Conditions of Employment Form" ("Acknowledgment Form"). Doc. [24-1] at ¶ 7.  Under the terms of the Acknowledgment Form, Plaintiff "acknowledge[d] that the offer of employment made to [her was] contingent upon meeting all employment requirements," including "[her] review and agreement to 'Solutions: An Alternative Dispute Resolution Procedure'" ("Solutions Procedure"). Doc. [20-3], Ex. C.  By signing the Acknowledgment Form Plaintiff agreed "to resolve disputes in accordance with the terms of the Solutions Procedure" and "to waive the right to pursue Covered Claims (as defined in the Solutions Procedure) against [Defendant] in Court." *Id.*  The terms of the Acknowledgment Form also provided that Plaintiff's "signature . . . constitutes acknowledgment of [her] receipt and review of a copy of and agreement to the Solutions Procedure." *Id.*

Defendant did not tender Plaintiff a hard copy of the Solutions Procedure to Plaintiff.  Doc. [24-1] at ¶ 10.  However, in an email and accompanying offer letter to Plaintiff on January 4, 2014, Defendant directed Plaintiff to visit its "Transfer Offer" website "to review important GE policies and to obtain the necessary paperwork need to accept [the] offer." Doc. [20-1], Ex. A at 2.  The Solutions Procedure was posted on that website.  Doc. [20] at ¶ 4.

Plaintiff signed the Acknowledgment Form on January 5, 2011, acknowledging, *inter alia*, her "receipt and review" of the Solutions Procedure.  Doc. [20-3], Ex. C.  She commenced work in

2

her new position on January 10, 2011, and remained in that new role until in or around May 2013, at which time her employment was terminated as part of Defendant's "Reduction in Force" initiative. Doc. [20] at 2; Doc. [20-3], Ex. C.

Plaintiff initiated this lawsuit on May 6, 2014, charging Defendant with discrimination based on race in violation of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e *et seq*, retaliation based on the same, "promissory estoppel," and "negligent misrepresentation."  Doc. [1].  On August 13, 2014, Defendant filed the instant motion to compel arbitration and dismiss Plaintiff's complaint or, in the alternative, to stay the proceedings.  Doc. [18].

## II.  DISCUSSION

### A.    Federal Arbitration Act

The statutory provisions relevant to the enforcement of an arbitration agreement are §§ 2, 3, and 4 of the Federal Arbitration Act ("FAA").  Section 2, "the preliminary substantive provision of the Act," *Rent-A-Center*, *West*, *Inc.* v. *Jackson*, 561 U.S. 63, 67 (2010) (internal quotation marks omitted), states in relevant part:

> A written provision in . . . a contract . . . to settle by arbitration a controversy thereafter arising out of such contract . . . or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.

Sections 3 and 4 prescribe procedures courts follow when considering motions to compel arbitration pursuant to § 2.  Section 3 requires the court in which suit has been brought "upon any issue referable to arbitration under an agreement in writing for such arbitration" to "stay the trial of the action" "upon being satisfied that the issue involved in such suit . . . is referable to arbitration

under such an agreement."

Section 4 states that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." *Id.* § 4. Section 4 also states that "[i]f the making of the arbitration agreement . . . be in issue, the court shall proceed summarily to the trial therefore." No trial, however, is necessary "where the court can rule upon the existence of the arbitration agreement 'as a matter of law on the record before it.'" *Adams v. Suozzi*, 433 F.3d 220, 228 (2d Cir. 2010) (quoting *Sphect v. Netscape Commc'n Corp.,* 306 F.3d 17, 28 (2d Cir. 2002)).

In considering a petition under § 2, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *JLM Indus*., *Inc. v. Stolt Nielsen SA*, 387 F.3d 163, 171 (2d Cir. 2004) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, (1983)). "This principle is based upon the fact that the FAA is an expression of 'a strong federal policy favoring arbitration as an alternative means of dispute resolution.'" *Id.* (quoting *Hartford Accident & Indem. Co. v. Swiss Reinsurance Am. Corp.*, 246 F.3d 219, 226 (2d Cir.2001)).

**B.** **Agreement to Arbitrate**

In their respective discussions of the agreement to arbitrate in their briefs on the instant motion, the parties discuss rights and obligations raised in both the Acknowledgment Form and the Solutions Procedure. Accordingly, the parties' "arbitration agreement," as the term is used in this Ruling, refers to an agreement jointly embodied in the Acknowledgment Form, signed by Plaintiff, and the Solutions Procedure that the form incorporates by reference.

4

The Solutions Procedure sets forth all the terms of the parties' agreement to arbitrate, but it also prescribes other processes by which "covered claims," including those alleged in Plaintiff's complaint, are to be resolved at General Electric ("GE"). Doc. [20-2], Ex. B at 5. Specifically, the Solutions Procedure requires employees' claims at GE to progress through a four level dispute resolution process. The first three levels of that process seek dispute resolution through mediation or discussions between management and the employee. Parties proceed to arbitration in the fourth level of the process. Defendant seeks to compel arbitration pursuant to the fourth level of the Solutions Procedure.

The section of the Solutions Procedure relating to arbitration contains specific language concerning the parties' agreement to arbitrate. It also contains a delegation provision that embodies the parties' agreement to arbitrate the enforcement of the arbitration agreement. The delegation provision states as follows:

> The Arbitrator, and not any court or agency, shall have exclusive authority to resolve any dispute relating to the applicability, interpretation, formation or enforceability of this Agreement, including, but not limited to, any claim that the entirety or any part of this Agreement is voidable or void.

Doc. [20-2], Ex. B at 22.

## C.  Analysis

Relying on the Supreme Court's holding in *Rent-A-Center*, *West*, *Inc*. *v*. *Jackson*, 561 U.S. 63 (2010), Defendant asserts that the "delegation provision" provides that "the arbitrator — not the Court — must decide threshold arbitrablity issues." Doc. [19] at 12. Stated differently, Defendant argues that the Court may not even consider whether the parties entered a valid and enforceable arbitration agreement because that question may *only* be decided by an arbitrator.

5

Plaintiff does not directly refute that argument.  Rather, she opposes the motion to compel on grounds that: (1) the alleged agreement to arbitrate is unconscionable, and that (2) there was no meeting of the minds sufficient to form a contractual obligation to arbitrate because (a) Defendant never provided her with the Solutions Procedure, and (b) the Solutions Procedure is, any event, missing critical provisions.

Plaintiff's first argument assumes that an *agreement to arbitrate exists*, and that it is *voidable* as unconscionable.  The second argument implies that, in the absence of a meeting of the minds, *no agreement to arbitrate was formed*, and hence the arbitration agreement is *void* as having never come into existence.  *See Sphere Drake Ins. Ltd. V. Clarendon Nat. Ins. Co.*, 263 F.3d 26, 31-32 (2nd Cir. 2001**)** (discussing differences between void and voidable contracts).  Plaintiff does not expressly identify the distinction between void and voidable contracts, but it is a critical one.  Each argument is governed by a separate line of authority.  Plaintiff's first argument, that the alleged arbitration agreement is voidable as unconscionable, is resolved by the Supreme Court's decision in *Rent-A-Center*, a case which Defendant claims precludes the Court from considering the merits of that argument.  The Court's analysis with respect to Plaintiff's second argument, that the alleged arbitration agreement is void because there was no meeting of the minds, is informed by the Second Circuit's ruling in *Sphere Drake.*

## 1.      A Voidable Contract

The Court turns first to Plaintiff's argument that the alleged agreement to arbitrate is voidable as unconscionable.  In *Rent-A-Center*, a case reflecting a challenge nearly identical to that at issue here, the Supreme Court considered whether a district court was authorized to decide whether an arbitration agreement was unconscionable where that agreement's delegation provision explicitly

6

assigned the question of arbitrability to an arbitrator. *Rent-A-Center*, 561 U.S. at 65. The arbitration agreement "provided for arbitration of all 'past, present or future' disputes arising of [respondent's] employment with Rent-A-Center, including 'claims of discrimination' and 'claims for violation of any federal . . . law.'" *Id.* at 65-66. The delegation provision provided that "'[t]he Arbitrator . . . shall have exclusive authority to resolve and dispute relating to the interpretation, applicability, enforceability or formation of this Agreement including, but not limited to any claim that all or any part of this Agreement is void or voidable.'" *Id.* at 66 (alterations in original). Petitioner sought enforcement of that provision, while respondent challenged the arbitration agreement on grounds that it was unconscionable. *Id.* at 66.

The *Rent-A-Center* Court began its analysis by noting that parties' agreement to arbitrate "'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy," *id.* at 68-69 (citations omitted), is "valid under § 2 'save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Id.* at 70 (quoting 9 U.S.C. § 2). The Court went on to note that there are two types of validity challenges under § 2. *Id.* at 70. "'One type challenges specifically the validity of the agreement to arbitrate,' and '[t]he other challenges the contract as a whole, either on a ground that directly affects the entire agreement (*e.g.*, the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid.'" *Id.* (quoting *Buckeye Check Cashing*, *Inc. v. Cardegna*, 546 U.S. 440, 444 (2006)). Relying on its earlier holding in *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967), and the progeny of that case, the Court stated "only the first type of challenge is relevant to a court's determination whether the arbitration agreement at issue is enforceable." *Id.* (footnote omitted). The Court explained that this is "because

7

§ 2 states that a 'written provision' 'to settle by arbitration a controversy' is 'valid, irrevocable, and enforceable' *without mention* of the validity of the contract in which it is contained." *Id.* (quoting 9 U.S.C. § 2) (emphasis in original). The Court stated that, in consequence, "a party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate." *Id.*

In concluding that general challenges to a contract do not preclude enforcement of arbitration agreements, the Court was reiterating the principle of "severability" articulated in prior rulings. *See Buckeye*, 546 U.S. at 445; *Prima Paint*, 388 U.S. at 447 . The principle directs that where a party challenges a contract as a whole (or another provision unrelated to arbitration), as opposed to the specific agreement contained within the contract to arbitrate the question of arbitrability, the challenge is for the arbitrator to decide, not the court. *See id.* at 70-71; *see also Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445 (2006). This rule holds true even where a general challenge to a contract may *imply* a direct a challenge to the agreement to arbitrate. The *Rent-A-Center* Court explained, for example, that in *Prima Paint*, the Court had  previously compelled arbitration, where a party claimed that a contract for services was voidable because it was induced by fraud, but had not specifically claimed fraud in the inducement of the arbitration clause itself. Referencing *Prima Paint*, the *Rent-A-Center* Court stated:

> even where . . . the alleged fraud that induced the whole contract equally induced the agreement to arbitrate which was part of that contract . . . we nonetheless require the basis of challenge to be directed specifically to the agreement to arbitrate before the court will intervene.

*Rent-A-Center*, 561 U.S. at 71; *see also Prima Paint*, 388 U.S. at 404 (stating "that statutory language does not permit the federal court to consider claims of fraud in the inducement of the

contract generally," and that "in passing upon a § 3 application for a stay while the parties arbitrate, a federal court may consider only issues relating to the making and performance of the agreement to arbitrate"). Moreover, the *Rent-A-Center* Court confirmed that the requirement that a challenge be posed directly at the delegation provision exists, even though the underlying contract is itself an arbitration agreement. *Id.* at 72 (noting that it "makes no difference" whether "the underlying contract is itself an arbitration agreement," or is "unrelated to arbitration"). Applying *Prima Paint* and related cases to the facts before it, the *Rent-A-Center* Court concluded that the district court had properly compelled arbitration based on the fact that respondent had challenged the *entire* agreement to arbitrate but had failed to specifically challenge the delegation provision.

In the case at bar, Plaintiff's argument that the arbitration agreement is voidable as unconscionable is a challenge to the contract generally, and the same exact losing argument made by respondent in *Rent-A-Center*. As Defendant correctly notes in its reply to Plaintiff's response to the instant motion, although Plaintiff challenged the arbitration as unconscionable, "[Plaintiff] has not even mentioned the delegation [provision] in her [response to the instant motion], let alone contested the enforceability of it." Doc. [25] at 7. Short of directing her challenging specifically at the delegation provision, Plaintiff states at the outset of her response that "the alleged *Agreement* is both procedurally and substantively unconscionable." Doc. [24] at 1 (emphasis added). She assails the *entire* arbitration agreement as unconscionable throughout her opposition.

"[Q]uestions of contractual validity relating to the unconscionability of the underlying arbitration agreement must be resolved first, as a matter of state law, before compelling arbitration pursuant to the FAA." *Cap Gemini Ernst & Young, U.S. L.L.C. v. Nackel*, 346 F.3d 360, 365 (2d Cir. 2003). Toward this end, the parties dispute which state law governs the enforcement of the

9

arbitration agreement.  Plaintiff contends that either the law of Wisconsin or North Carolina applies because she signed the arbitration agreement in Wisconsin, and went to work in North Carolina after receiving an offer letter from Defendant's office in that state.  Defendant argues that New York law applies because the law of that state is designated in the arbitration agreement's choice-of-law clause. Where, as here, the "rules for determining whether the parties have mutually assented to a contract term" are "substantially similar" in each state, the district court "need [not] resolve [the] typically thorny-choice-of-law question." *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 119 (2d Cir. 2012).  It suffices to say that a party raising the defense of unconscionability in New York, North Carolina, and Wisconsin must show that the contract is both procedurally and substantively unconscionable.  *See, e.g., Wisconsin Auto Title Loans, Inc. v. Jones*, 290 Wis. 2d 514, 532 (2006); King v. King, 114 N.C. App. 454, 458, (1994); *Gillman v. Chase Manhattan Bank, N.A.,* 73 N.Y.2d 1, 10 (1988).

　　　　To make out a claim that the delegation provision is procedurally unconscionable, Plaintiff must direct her procedural unconscionability argument at the delegation provision specifically. Plaintiff does not posit that narrower challenge; rather, she contends generally that the "*Acknowledgment* [*Form*] was presented to [her] in a take-it-or-leave-it transaction." *Id.* at 10 (emphasis added).  And that in consequence she "was unaware of the arbitration *terms* being imposed upon her and was not free to change them." *Id.* at 11 (emphasis added).  Under *Rent-A-Center*, Plaintiff is required to direct her challenge specifically at the delegation provision even where, as here, a specific challenge to the delegation provision is implicit in her claim that the entire agreement to arbitrate is procedurally unconscionable.  *Rent-A-Center*, 561 U.S. at 72 ("[U]nless [respondent] challenged the delegation provision specifically, we must treat it as valid under § 2,

10

and must enforce it under §§ 3 and 4, leaving any challenge to the validity of the agreement as a whole for the arbitrator.").

Likewise, none of Plaintiff's substantive unconscionability challenges are directed specifically at the delegation provision. Rather, as set forth in the following footnote, Plaintiff claims that *other* aspects of the Solutions Procedure unreasonably favor Defendant.[2] As an initial

---

[2]Challenging the Solutions Procedure as unreasonably favoring Defendant, Plaintiff states:

(i) An employee desiring to protect his or her civil rights must proceed through *four* levels of proceedings, each sequentially designed to allow GE to garner information with which to defend itself. In contrast, should GE wish to pursue a claim, it need only undertake the final *two* levels of proceedings, namely mediation and arbitration.

(ii) Each Solutions level through which an employee must proceed after level one must be implemented within very short time frames or deadlines, significantly shorter than the applicable statute of limitations (e.g., 30 days from resolution of the prior level). Missing a deadline exposes an employee to disqualification and forfeiting his or her entire claim.

(iii) Solutions is administered by a GE 'Solutions Administrator' which controls the entire Solutions process and makes decisions on such crucial items as deadline extensions, etc.

(iv) GE decides, but does not disclose in Solutions, the arbitration agency and applicable rules to be used in the arbitration and can therefore change the designated entity at any time.

(v) GE reserves the right at any time to 'modify or discontinue' Solutions, including presumably any obligation it has to arbitrate or abide by a decision altogether.

(vi) Employees' claims must be arbitrated, while those most likely to be pursued by GE such as employee violations involving intellectual property, trade secrets, confidential information, NLRA, ERISA, government contracts and programs, the False Claims Act, federal procurement laws, and actions involving third parties are all *excluded* from Solutions and therefore need not be arbitrated.

(vii) Injunction actions and temporary restraining orders, are far more likely to be brought by GE than by any employee, are expressly *excluded* from Solutions and need not be arbitrated.

matter, some of Plaintiff's challenges are directed at the first three levels of the Solutions Procedure and are therefore readily dismissed as inapposite to a claim that the delegation provision is substantively unconscionable. *See, e.g.,* Doc. [24] at 13-14, ¶ (i) ("An employee desiring to protect his or her civil rights must proceed through *four* levels of proceedings") (some emphasis omitted); ¶ (ii) ("Each Solutions level through which an employee must proceed after level one must be implemented within very short time frames or deadlines"); ¶ (xi) ("An employee once starting down the four-step process cannot add a claim").

Moreover, the remaining aspects of the Solutions Procedure contested by Plaintiff are at most challenges to *both* the parties' agreement to arbitrate covered claims *and* the delegation provision. For example, her challenge to the "presumptive arbitration rules" and the requirement that arbitration decisions are to be "strictly confidential," relate as much as to an arbitration about covered claims

---

(viii)  An arbitrator cannot order GE to reinstate an employee if GE objects.

(ix)  No class or group claims are allowed to be arbitrated.

(x)  Any decision is strictly confidential, and may not be published or shared.  It can have no legal effect on the claims of any other employee.

(xi)  An employee once starting down the four-step process cannot add a claim, but rather, unless GE agrees, must start over again for any new claims, even those arising out of the same facts.

(xii)  The presumptive arbitration rules delineated allow for (1) only 20 interrogatories *including* all subparts, (2) requests for production, (3) 15 requests for admission, (4) 3 depositions, *including* expert depositions, and (5) a hearing that is limited to two 8-hour days (1 day for each side) – all of which are 'presumptively' valid, although an arbitrator has discretion to depart for good reason based upon the 'fact of the particular claim.'

Doc. [24] at 13-14 (citation to record, footnote, and some emphasis omitted).

as they do to an arbitration about the enforcement of the arbitration agreement.  Doc. [24] at 14, ¶¶ (x-xi).  In *Rent-A-Center*, the Court noted that the respondent's substantive unconscionability arguments challenged arbitration procedures "that were to be used during arbitration under *both* the agreement to arbitrate employment related disputes *and* the delegation provision."  *Rent-A-Centr*, 561 U.S. at 74 (emphasis in original).  The *Rent-A-Center* Court explained that the respondent's challenges failed because he had not made any arguments specific to the delegation provision.  *Id.* at 74-76.  This Court is bound to reach the same conclusion here.

Furthermore, even if the Court were authorized to entertain the merits of Plaintiff's unconscionability argument — as might be the case if the Court granted Plaintiff's motion for oral argument on the instant motion, and, at the hearing that followed, she specifically challenged the delegation provision — there is no evidence to support the conclusion that the delegation provision is substantively unconscionable.  A finding in that respect would require a showing that the delegation provision is one sided or oppressive.  *See, e.g., Wisconsin Auto Title Loans, Inc. v. Jones*, 290 Wis. 2d 514, 536 (2006) ("Substantive unconscionability refers to whether the terms of a contract are unreasonably favorable to the more powerful party."); King v. King, 114 N.C. App. 454, 458, (1994) ("Substantive unconscionability . . . involves the harsh, oppressive and one-sided terms of a contract, i.e., inequality of the bargain." (quotation marks omitted)); *Gillman v. Chase Manhattan Bank, N.A.,* 73 N.Y.2d 1, 12 (1988) (Substantive unconscionability "entails an analysis of the substance of the bargain to determine whether the terms were unreasonably favorable to the party against whom unconscionability is urged.").  The fact that the delegation provision equally binds both parties weighs heavily against such a conclusion.  *See, e.g., JLM Indus.*, 387 F.3d at 170 n. 5 (2d Cir. 2004) ("Even where there is some disparity in bargaining power, there is no inherent

13

unfairness or unconscionability in an arbitration clause if both parties are bound by it and know of

its existence."); *Desiderio v. National Ass'n of Sec. Dealers, Inc.*, 191 F.3d 198, 207 (2d Cir. 1999)

("[The contract] binds *both* parties to mandatory arbitration and may not be said to favor the stronger

party unreasonably." (emphasis in original)); *see also Nayal v. HIP Network. IPA, Inc.*, 620 F. Supp.

2d 566, 573 (quoting same and stating "the Arbitration Provision is not substantively unconscionable

because it equally binds HIP and Nayal to arbitration, and therefore does not unreasonably favor

HIP").  The Court is unable to conclude that there is anything in the parties' agreement to arbitrate

the enforcement of the arbitration agreement that oppresses Plaintiff or so unreasonably favors

Defendant as to render that agreement substantively unconscionable.

## 2.    A Void Contract

The Court turns next to Plaintiff's claim that there was no meeting of the minds with respect

to the formation of the arbitration agreement.  The preceding Part of this Ruling proceeded from the

premise, articulated first in *Prima Paint* and more recently in *Rent-A-Center*, that the Court may not

consider general challenges to an agreement to arbitrate; rather, the Court may entertain only those

challenges directed specifically at the parties' agreement to arbitrate the enforcement of the

arbitration provision.  That line of authority superficially suggests that the Court is precluded from

considering Plaintiff's claim that the arbitration agreement is void *ab initio*.  Like Plaintiff's

challenge to the arbitration agreement as unconscionable, her claim that the *entire* agreement is void

because she never assented to the agreement is a challenge of a generalized nature, not specifically

directed at the delegation provision.

In *Sphere Drake*, however, the Second Circuit explained that a claim that a contract is void

in the absence of a meeting of the minds is distinct from a claim that a contract is voidable.  A void

14

contract, the Circuit is explained, is one which has "not come into existence" because the "parties [have] fail[ed] to agree to essential contract terms." *Sphere Drake*, 263 F.3d at 31 (quotation marks omitted). It is therefore "wholly unenforceable." *Id.* In contrast, "a voidable contract is an agreement that '[u]nless rescinded . . . imposes on the parties the same obligations as if it were not voidable.'" *Id.* (quoting Samuel Williston & Richard A. Lord, *A Treatise on the Law of Contracts* § 1:20, at 49 (4th ed. 1990)). The Circuit explained that in *Prima Paint*, "the contract at issue . . . was merely voidable because an allegation of fraud in the inducement is a defense that renders contracts voidable, but not void." *Id.* It compared *Prima Paint* with its holding in *Interocean Shipping Co. v. Nat'l Shipping & Trading Corp*., 462 F.2d 673 (2d Cir. 1972), in which a party's claim that there was no meeting of the minds with respect to the formation of an arbitration agreement was a challenge to the agreement as *void*. *Id.* at 30.

Summarizing its discussion of void and voidable contracts in the context of *Prima Paint* and *Interocean*, the *Sphere Drake* Court stated:

> If a party alleges that a contract is void and provides some evidence in support, then the party need not specifically allege that the arbitration clause in that contract is void, and the party is entitled to a trial on the arbitrability issue pursuant to 9 U.S.C.A. § 4 and the rule of *Interocean*. However, under the rule of *Prima Paint*, if a party merely alleges that a contract is voidable, then, for the party to receive a trial on the validity of the arbitration clause, the party must specifically allege that the arbitration clause is itself voidable.

*Id.* at 32. The Circuit went on to note that the party challenging an arbitration agreement as void is not entitled to a trial under § 4 in the absence of "some evidence substantiating its claim." *Id.*; *see also Adams v. Suozzi*, 433 F.3d at 228 ("no trial is required where the court can rule upon the existence of the arbitration agreement as a matter of law on the record before it" (quotation marks omitted)).

Considering the *Prima Paint* and *Interocean* rules against the facts before it, the Circuit noted that Sphere Drake had contested enforcement of the contract's arbitration provision on grounds that its agent acted outside the scope of its agency in negotiating the contract. The Circuit concluded that the rule of *Interocean* applied to that argument since the contract would be rendered *void* if Sphere Drake could establish that its agent lacked authority to negotiate the contract and the other party knew of that fact. *Id.* at 32. Like Sphere Drake, Plaintiff in the case bar also opposes the agreement to arbitrate on grounds that she never agreed to its terms. It is a claim that the contract is *void*, and therefore one subject to this Court's review under *Sphere Drake*.

Plaintiff attempts to establish that there was no meeting of the minds with respect to contract formation by claiming that the Solutions Procedure was never tendered to her. She points to specific language in the Solution Procedure that provides that an employee is covered by the Solutions Procedure only if they "are provided with the Solutions Procedure and told they will be covered by the Solutions [P]rocedure." Doc. [20-2], Ex. B at 24. Plaintiff also argues that there is no enforceable agreement because the Solutions Procedure does identify the Dispute Resolution Organization ("DRO") that is to preside over arbitration between the parties and also does not include the DRO's rules of procedure that are to govern the arbitration proceedings.

Whether the parties agreed to arbitrate a certain matter is governed by state-law principles regarding contract formation. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Mehler v. Terminix Int'l Co.*, 205 F.3d 44, 48 (2d Cir. 2000). Under the law of any state that may apply to this dispute, New York, North Carolina or Wisconsin, both parties must mutually assent to the essential terms of the agreement in order to establish a meeting of the minds and an enforceable contract. *See e.g., Snyder v. Freeman*, 300 N.C. 204, 218 (1980); *Gupta v. University*

16

*of Rochester*, 57 A.D.2d 731, 731 (4th Dep't 1977); *Witt v. Realist, Inc.,* 18 Wis. 2d 282, 297 (1962).

The parties' agreement to arbitrate "covered claims" is set forth in the Acknowledgment Form that was signed by Plaintiff on January 5, 2011.  By signing the Acknowledgment Form Plaintiff "agree[ed] to resolve disputes in accordance with the terms of the Solutions Procedure," and "as a condition of [her] employment," to "waive the right to pursue Covered Claims (as defined the Solutions Procedure) against the Company in Court."  Doc. [20-3], Ex. C.  Therefore, irrespective of whether Defendant disseminated the Solutions Procedure to Plaintiff, the Acknowledgment Form, standing alone, is indicative of a meeting of the minds with respect to the parties' agreement to arbitrate the "covered claims" at issue here.  Having signed the Acknowledgment Form, Plaintiff cannot now claim to be innocent of an agreement to arbitrate.  *See State Farm Fire and Cas. Co. v. Home Ins. Co.*, 276 N.W.2d 349, 351 (Wis. App. 1979) ("Failure to read a contract before signing it will generally not affect its validity");  *Ellis v. Mullen*, 238 S.E.2d 187, 189 (N.C. App. 1977) ("one who signs a contract is presumed to know its contents"); *Metzger v. Aetna Ins. Co.*, 277 N.Y. 411, 416 (1920) (a party "who signs or accepts a written contract . . . is conclusively presumed to know its contents and to assent to them").

Furthermore, although Defendant did not physically tender the Solutions Procedure to Plaintiff, that document was nevertheless made available to her.  Courts have concluded that a contractual obligation to arbitrate exists where an employer has made an agreement to arbitrate available to its employees, even if the employer has not physically tendered a hard copy of the agreement to its employee.  *See, e.g., Manigault v. Macy's E., LLC*, 318 F. App'x 6, 7 (2d Cir. 2009) (compelling arbitration where plaintiff had not rebutted presumption that dispute resolution program was mailed to her); *Dixon v. NBCUniversal Media, LLC*, 947 F. Supp. 2d 390, 400 (S.D.N.Y. 2013

17

(finding contractual obligation to arbitrate where plaintiff completed a PowerPoint training course on the Solutions Procedure, but did not follow a link to Solutions Procedure); *Raniere v. Citigroup Inc.*, 827 F. Supp. 2d 294, 307 (S.D.N.Y. 2011) (finding that plaintiff was bound by arbitration agreement where there was evidence that she received email about the arbitration agreement and continued employment).

There is no genuine issue at bar as to whether Defendant made the Solutions Procedure available to Plaintiff; rather, Plaintiff's challenge is couched in the contention that her attention was not sufficiently drawn to the Solutions Procedure by the Acknowledgment Form. The Court finds that argument wholly unpersuasive. The offer letter Plaintiff received on January 4, 2014, directing her to complete the Acknowledgment Form, also included a link to a website where Plaintiff was "to review important GE policies and . . . obtain the necessary paperwork." Doc. [20-1], Ex. A at 2. It would have been obvious to a reasonable person that the Solutions Procedure, referenced in the Acknowledgment Form, was among the "important . . policies and . . . necessary paperwork," to be located and reviewed on the website. Furthermore, even if it had not occurred to Plaintiff to look for the Solutions Procedure on the website, she would no doubt have been directed there had she accepted one of several invitations, contained in the offer letter and email to which it was attached, encouraging her to direct employment related questions to Defendant's human resources people or other personnel. Doc. [20-1], Ex. A.

The Court is also unable to conclude that the arbitration agreement is rendered void by the absence of provisions in the Solutions Procedure concerning the DRO and its rules governing arbitration. While those provisions are not included in the parties' agreement to arbitrate, the Solutions Procedure states that "[e]mployees may obtain information regarding which DRO has been

18

designated . . . and the . . . rules governing such proceedings . . . . from the Solutions Administrator or the local HR manager." Doc. [20-2], Ex. B at 3. Because the Solutions Procedure provides that the information is available to employees, and Plaintiff does not claim that she was denied it, the Court cannot conclude that the Solutions Procedure is deficient in this respect. Furthermore, the DRO and its rules are not *essential* terms, which if absent from the arbitration agreement, would render the agreement void. *See, e.g., Hojnowski v. Buffalo Bills, Inc.,* 964 F. Supp. 2d 232, 236 (W.D.N.Y. 2014) (finding unpersuasive plaintiff's claim "that the rules and procedures governing arbitration are essential terms"); *Scaffidi v. Fiserv, Inc.*, No. 05C 1046 (JPS), 2006 WL 2038348, at *2 (E.D. Wis. July 20, 2006) ("a choice-of-law provision is not an essential terms because the parties need not specify the law that they wish to govern their contractual rights and duties"); *King v. Bryant*, 737 S.E.2d 802, 808 (N.C. Ct. App. 2013) (rejecting Plaintiff's claim that the absence of provisions in agreement concerning procedures by which arbitration is to be conducted rendered the agreement "insufficiently definite to be enforced").

Plaintiff has neither established that the agreement to arbitrate is void, nor that its delegation provision is voidable. Accordingly, the Court will grant Defendant's motion to compel arbitration.

### 3.    Stay or Dismissal of the Action

Defendant has also moved for a dismissal this action pursuant to Rules 12(b)(1) and 12(b)(6) or, in the alternative, to stay the proceedings pursuant to 9 U.S.C. § 3 pending the completion of arbitration. As noted earlier, the FAA directs the district court, "on application of one the parties," to enter a stay in a case where the asserted claims are "referable to arbitration." 9 U.S.C. § 3. Courts nevertheless follow "the rule that, '[w]here all of the issues raised in the Complaint must be submitted to arbitration, the Court may dismiss an action rather than stay proceedings.'"

*Spencer–Franklin v. Citigroup/Citibank N.A.*, No. 06 cv 3475 (GWG), 2007 WL 521295, at *4 (S.D.N.Y. Feb. 21, 2007) (quoting *Rubin v. Sona Int'l Corp.*, 457 F. Supp.2d 191, 198 (S.D.N.Y.2006)) (collecting cases); *see also Kowalewski v. Samandarov*, 590 F. Supp.2d 477, 491 (S.D.N.Y. 2008); *Drakeford v. Washington Mut.*, No. 07 cv 3489 (GBD), 2008 WL 2755838, at *4 (S.D.N.Y. July 11, 2008); *Nayal v. HIP Network Servs. IPA, Inc.*, 620 F. Supp.2d at 574 (citing same).

The Court has determined that all of Plaintiff's claims must be submitted to arbitration. Rather than stay the proceedings, the Court will dismiss Plaintiff's complaint without prejudice to her right to replead when arbitration has been completed.

### III.   CONCLUSION

For the reasons stated above, Defendant's Motion to Compel Arbitration and Dismiss (Doc. #18) is GRANTED without prejudice to Plaintiff's right to replead after the arbitration proceedings contemplated in this Ruling have concluded.

Plaintiff's Motion for Hearing (Doc. #27) is DENIED.

The Clerk is directed to close the file.

Dated:   New Haven, Connecticut
           December 19, 2014

                                    /s/ Charles S. Haight, Jr.
                                    CHARLES S. HAIGHT, JR.
                                    Senior United States District Judge

20